Charles S. DUPIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 79A04–8708–CR–243.

Court of Appeals of Indiana,
Fourth District.

June 13, 1988.

Michael J. Stapleton, Cheryl Knodle, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Charles S. Dupin (Dupin) appeals the Tippecanoe Superior Court's order requiring him to pay restitution for lost wages and other expenses to those persons injured in a collision resulting from his driving while intoxicated as a condition of probation after he pled guilty to criminal charges of four counts of operating a motor vehicle with .10% blood alcohol or more resulting in bodily injury and one count of the same resulting in death.

The sole issue in this cause, restated, is whether the trial court abused its discretion by ordering Dupin to pay the victims of his crime $31,680 without crediting against that sum a prior $100,000 settlement paid to the victims by his insurance company to settle civil claims arising from the same transaction.

We affirm.

In September, 1985, Dupin, a Purdue University student, was driving while intoxicated, i.e., his blood alcohol level at that time exceeded .10 percent. While doing so, he rear ended the Sausman vehicle, it crossed the center line and collided head on with the Thomas family automobile. Mrs. Sausman died and four others were seriously injured. In a criminal action, Dupin pled guilty to one count of operating a vehicle with .10 percent blood alcohol or more resulting in death, and four counts of operating a vehicle with .10 percent blood alcohol or more resulting in serious bodily injury, and the trial court sentenced him to six consecutive prison terms totaling 13 years, suspended. The court further placed Dupin on supervised probation with the requirement he make restitution to the victims in the total sum of $31,680, as one of the conditions thereof.

In a civil action, Dupin's insurance company paid its policy limits, namely, $100,000, $75,000 to the Sausmans and $25,000 to the Thomases to settle their civil claims arising from the collision.

We learn from the appellee's brief and the record this settlement stipulated the releases given by the victims in return for settlement by the surety was to "have no application to any obligation to pay restitution to said defendants imposed upon the said Charles S. Dupin by the Superior Court of Tippecanoe County in Cause No. S–5382 entitled *State of Indiana vs. Charles S. Dupin.*" (R. 42–44).

Dupin appeals.

He argues he should have the benefit of a set off of the $100,000 insurance settlement against the $31,680 restitution payment required as a condition of probation by the trial court. Dupin is wrong.

■ The trial court correctly followed the principles set down in *Miller v. State* (1986), Ind., 502 N.E.2d 92. There, Miller

argued because he had been discharged in bankruptcy, the trial court was precluded from ordering restitution as a condition of probation. Our Supreme Court determined the matter against Miller, saying

> Probation is a criminal sanction aimed at providing an offender with the opportunity to rehabilitate himself without being confined to a correctional institution. (Citing cases). Restitution, as a condition of probation, can be an instrumental part of the offender's rehabilitation.... The primary goal of restitution is, therefore, to vindicate the rights of society, not to compensate the offender's victim, although that is certainly a result of the restitution. (Citing case). Thus, an order of restitution is as much a part of a criminal sentence as a fine or other penalty.

*Miller*, 502 N.E.2d at 95. The same principle applies here. Settlements in civil cases can have no effect upon sentences meted out in criminal cases.

■ The trial court incorrectly determined the collateral source rules applied here. Under that rule, compensation for loss received from a collateral source, independent of the wrongdoer, as from insurance, cannot be set up by the wrongdoer in mitigation of damages. *Alderidge v. Abram & Hawkins Excavating Co., Inc.* (1985), Ind.App., 474 N.E.2d 107; *Evans v. Breeden* (1975), 164 Ind.App. 558, 330 N.E.2d 116. Here, Dupin's insurance company paid the settlement money, not one with whom the injured parties had contracted. The source of these funds was one in which Dupin had an interest, not one collateral to Dupin. *Powers v. Ellis* (1952), 231 Ind. 273, 108 N.E.2d 132, 135. Further, this is a criminal case, not one civil in nature, and civil doctrines have no application. We believe the trial court meant to say civil settlements, whatever the source, have no bearing upon sentencing in criminal cases, as we have noted above. The error, if any is harmless.

■ A partial civil settlement is not a substitute for restitution in criminal proceedings. *People v. Clifton* (1985), 2d Dist., 172 Cal.App.3d 1165, 219 Cal.Rptr. 904; *State v. Hart* (1985), 299 Ore. 128, 699 P.2d 1113. Probation is a matter for the trial court's sound discretion. In specific cases, a trial court may determine restitution is necessary to correct a defendant's behavior to impress upon him the magnitude of the loss he has caused and his responsibility to make good that loss as completely as possible. These are the traditional goals in sentencing a defendant. *Miller, supra; Sales v. State* (1984), Ind. App., 464 N.E.2d 1336; *Ewing v. State* (1974), 160 Ind.App. 138, 310 N.E.2d 571.

Finally, Dupin's insurance company and the victims specifically contracted against the set-off for which Dupin so earnestly contends, as a condition of their settlement. Thus, in addition to the trial court's exclusive authority to deal with restitution as a condition of probation in criminal cases, the parties involved have specifically contracted against Dupin's relief by way of set-off against the restitution payment ordered by the lower court.

■ We do not believe the trial court committed fundamental error by sentencing Dupin on five separate counts, one for each of the five victims, as we would if the *Wilkoff* and *Theriault* cases cited in the concurring opinion were the law of Indiana. Indiana follows a different rule when injuries to the person rather than merely theft of property is involved in criminal cases. We believe it apparent *Clem v. State* (1873), 42 Ind. 420, is no longer the law, in light of *Johnson v. State* (1983), Ind., 455 N.E.2d 932, 937, and *Randall v. State* (1983), Ind., 455 N.E.2d 916, 931–932, both unanimous Indiana Supreme Court decisions holding separate sentences may be meted out in multiple victim cases, although the injuries occur because of one transaction. Also see *Hurst v. State* (1984), Ind.App., 464 N.E.2d 19, 21–22 (drug sales to two undercover officers at the same time supports a finding of guilty as to two separate offenses).

■ In sum, Indiana applies the "one larceny" rule strictly to offenses against property cases. Where personal injury or death, or the threat thereof is involved, each injury although resulting from the

same transaction, supports an individual count and a separate finding of guilty as to each person injured or killed, albeit the law may be otherwise in other states.

Affirmed.

MILLER, P.J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur in the determination that one convicted of a crime might be properly ordered to make restitution to all victims of his criminal conduct. I do not, however, agree that such restitution in this case may be premised upon Dupin's conviction of five separate counts, one each with respect to the five victims.

It is established that to twice punish a person for a single offense arising from one set of operative circumstances is fundamental error. *Haggard v. State* (1983) Ind., 445 N.E.2d 969. Accordingly, when such error appears we are obligated, sua sponte, to remedy it.

The statutes with which we are concerned are as follows:

"A person who violates section 1 or section 2 [9–11–2–1 or 9–11–2–2] of this chapter commits a class D felony if the crime results in serious bodily injury to another person." I.C. 9–11–2–4 (Burns Code Ed.Repl.1987).

"A person who violates section 1 or section 2 [9–11–2–1 or 9–11–2–2] of this chapter commits a class C felony if the crime results in the death of another person." I.C. 9–11–2–5 (Burns Code Ed. Repl.1987).

"A person who operates a vehicle with ten-hundredths percent (0.10%), or more, by weight of alcohol in his blood commits a Class C misdemeanor." I.C. 9–11–2–1(a) (Burns Code Ed.Supp.1987).[1]

As I read these provisions, in pari materia, *the crime* is the violation of I.C. 9–11–

2–1(a), which becomes a Class D felony if serious bodily injury results, or a Class C felony if someone is killed. The number of victims does not increase the number of crimes.

Although ancient, it would appear that *Clem v. State* (1873) 42 Ind. 420 remains binding precedent. In that case our Supreme Court held that if two persons were killed by the same act, the defendant could be convicted of only one murder.

More recent Indiana cases, though not so directly on point, which lend support for my view are *Raines v. State* (1987) Ind., 514 N.E.2d 298 (applying the "single larceny rule"); *American Film Distributors v. State* (1984) 1st Dist.Ind.App., 471 N.E.2d 3 (discussing with approval *Isaac v. State* (1982) 2d Dist.Ind.App., 439 N.E.2d 1193, which permitted conviction of only one count of exhibiting obscene materials although various materials were displayed to two boys); and *Hurst v. State* (1984) 4th Dist.Ind.App., 464 N.E.2d 19. In the *Hurst* case, although the court permitted two convictions, the facts disclosed that during the drug transaction, the defendant consummated two separate sales to two separate individuals. The court, however, appropriately observed:

"The whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the particular crime involved. *See, e.g., Duncan v. State,* [ (1980) 274 Ind. 457, 412 N.E.2d 770] ('dealing' in IND.CODE 35–24.1–4.1–2 (1976) is a single sales transaction, and sale involving several controlled substances is only one offense); *Isaac v. State,* (1982) Ind.App., 439 N.E.2d 1193 ('another person' in IND.CODE 35–30–10.1–2 (repealed 1983 Ind.Acts, P.L. 311 § 49) (now IND.CODE 35–49–3–1) is merely minimum number of viewers required for offense of exhibiting obscene

---

1. Dupin was not convicted of an offense involving "section 2 of this chapter." That section provides:

    "A person who operates a vehicle while intoxicated commits a Class A misdemeanor." I.C. 9–11–2–2 (Burns Code Ed.Repl.1987).

In this connection I therefore disagree with the characterization of the facts made by the majority: "Dupin, a Purdue University student, was driving while intoxicated...." Slip opinion, p. 2. Sections 1 and 2 are not synonymous. They do not describe the same crime.

matter and is not the limit, the term being merely descriptive, and not a characteristic, of the offense); *Bell v. United States,* (1955) 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (in Mann Act violation, interstate transportation is the focus, and only one offense is committed even though two women were involved in same act of transport). We therefore must examine our statute to determine what exactly the proscribed behavior encompasses and thus whether Hurst violated it once or twice." 464 N.E.2d at 21–22.[2]

The *Bell* case is of particular note. In *Bell,* the focus of the statute was interstate transportation. In the case before us, as earlier discussed, the focus is upon driving with a blood alcohol content in excess of .10%. In both instances only one offense was committed.

To the same effect is *United States v. Theriault* (1976) 5th Cir., 531 F.2d 281. There, a prisoner being transported by two guards vaulted over the seat of the car into the steering wheel causing an accident which injured both officers. The court held that both assaults arose out of a single act permitting only one conviction.

In *Wilkoff v. Superior Court of Orange County* (1985) 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134, the defendant was charged with one count of vehicular manslaughter for the one death she caused, six counts of driving under the influence (one for each of the six victims injured or killed), and six counts of driving with a blood alcohol level of .10 or more (one for each of the six victims). A unanimous California Supreme Court held:

"Our analysis begins with the recognition that a charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute—the gravamen of the offense— has been committed more than once.

\* \* \* \* \* \*

Defendants are not chargeable with a greater *number* of offenses simply because the injuries proximately caused by their single offense are greater. Rather, the Legislature may provide for increased *punishment* for an offense that has more serious consequences by, for instance, raising the statutory prison terms, adding enhancements, or upgrading the offense from a misdemeanor to a felony. The number and severity of injuries proximately caused by an offense may also be considered by a trial court in sentencing.

\* \* \* \* \* \*

Having set forth our reasoning and rejected the arguments of the district attorney, we now approve the rule first set forth in *People v. Lobaugh,* [ (1971) 18 Cal.App.3d 75, 95 Cal.Rptr. 547] that one instance of driving under the influence which causes injury to several persons is chargeable as only one count of driving under the influence." *Id.* 211 Cal.Rptr. at 745, 747, 748, 696 P.2d at 137, 139, 140.

I believe that we are required to vacate all convictions except that for the Class C felony. Such, however, has no effect upon whether the trial court properly ordered restitution be made to the multiple victims of the single crime committed.

The import of I.C. 35–50–5–3(b) (Burns Code Ed.Repl.1985) is that a victim might bring a civil action against the convicted defendant for damages other than those permitted in a restitution ordered under (a) of the statute. It therefore appears that a restitution order is limited to property damages, medical and hospital costs incurred before sentencing and earnings lost before sentencing.

---

2. The majority opinion concludes that *Clem v. State, supra,* is no longer the law. *Johnson v. State* (1983) Ind., 455 N.E.2d 932, and *Randall v. State* (1983) Ind., 455 N.E.2d 916, are cited for that proposition. It must be noted, however, that in *Johnson,* two separate and distinct attempts were committed. The defendant drove directly toward the first victim and "thereafter turned her car to go directly to [the second victim] and strike her." 455 N.E.2d at 936. In *Randall,* five convictions of confinement were permitted because there was a "personal crime" committed as to each of the five persons in the drug store. 455 N.E.2d at 932.

Nevertheless, a defendant may not shield himself from a restitution order by arguing a collateral source in the form of insurance payments made to the victim. The criminal's obligation flows to the victim. Whether the insurance company might lay claim to some or all of the amounts covered by a restitution order is a matter between the insurer and the insured victim. It is of no concern to the criminal. He is not compelled to pay twice.

I concur in the affirmance of the restitution order.